Daniel John MAGLIO,
Petitioner-Appellant,

v.

Arnold R. JAGO, Superintendent,
Respondent-Appellee.

No. 77–3331.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1977.

Decided July 3, 1978.

Peter Rosenwald, Cincinnati, Ohio (Court-appointed), for petitioner-appellant.

Daniel J. Maglio, pro se.

William J. Brown, Atty. Gen. of Ohio, Dennis L. Sipe, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee.

Before PECK and MERRITT, Circuit Judges, and THORNTON,* Senior District Judge.

PECK, Circuit Judge.

Daniel Maglio, a 16-year-old runaway, was arrested while driving a car which be-

---

* Honorable Thomas P. Thornton, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

longed to a man who had been found dead in his apartment that morning. Maglio was taken to police headquarters for questioning, and his *Miranda* rights were read to him by Police Captain Traub. Traub asked Maglio if he would waive his rights and answer questions, and Maglio replied, "Maybe I should have an attorney." Traub told Maglio he couldn't have an attorney then, but that he would have to wait until the next day in court, when an attorney would be appointed for him. Traub told him again that he didn't have to talk without a lawyer, but continued the questioning, asking how the boy got the car.[1] Maglio said he didn't have anything to hide, and finally, in response to further questions, told a story about purchasing the car, then changed his story and confessed to the murder.[2]

After this oral confession, the state court prosecutor was contacted, who arrived about 45 minutes later to tape-record the confession. Before beginning, the prosecutor again explained Maglio's rights, and the following exchange took place:

"Q. All right, do you further understand that before you, you would talk with us that you could have a lawyer here present with you, do you understand that."

"A. Yea, but I have to get a lawyer when I go to court. I can't afford it."

"Q. Well, let's go back up here. Let me ask you this question again. Do you understand that before you would talk to me or talk to the officers that you have a right to have a lawyer present with you before you talk to us. Do you understand that you have that constitutional right?"

"A. Yea, I know I got it."

"Q. Do you understand that?"

"A. Yea."

"Q. Okay, the next question is this. Do you understand further that if you want a lawyer but didn't feel that you could afford one, that we would have to appoint one for you before you talked to us. Do you understand that?"

"A. Before I did talk to you?"

"Q. Yea, do you understand that—duly appointed for you?"

"A. I understand it now. It's not the way it seemed before, but it doesn't matter."

"Q. Well, do you understand that right?"

"A. Yea."

"Q. Now, do you understand that if you would decide to talk with us that you could stop talking at any time that you want to, that you can just cease and be quiet? That's your constitutional right. Do you understand that?"

"A. Yes, sir."

Maglio then repeated his earlier confession. The substance of the two confessions was identical.

---

1. There is no dispute as to the substance of this exchange, though there is no transcript of the interrogation. At the pretrial hearing on the suppression of the confession, Captain Traub testified that after reading Maglio his rights, he asked him:

 Having these rights in mind, do you wish to talk to us now without an attorney. I asked if he understood that, and at that point he said that maybe he ought to have one, meaning an attorney. . . . And I told him that, well, I can't get you an attorney right now. We will have to stop questioning you. I said I would like to know how you got the car, but we can't question you anymore because you are entitled to have an attorney here, and you won't get one until you go to court. At this point he said that he had nothing to hide, and I kind of reiterated his rights to him a little bit, telling him he didn't have to talk and was entitled to an attorney; and I didn't want to violate his rights, but he could waive his rights and talk to us without an attorney. So he said that he would talk to us without an attorney.

2. Maglio and the victim, Walter Weyrick, were co-workers, and Maglio was earning extra money by giving vacuum cleaner demonstrations at night. The substance of the boy's confession was that Weyrick had agreed to a demonstration. While watching Maglio operate the cleaner, he was paring and cleaning his fingernails with a knife. Maglio claimed that the victim made a homosexual advance toward him, which he rebuffed, calling Weyrick a "queer." This angered Weyrick; a fight ensued, and Weyrick was stabbed. Maglio admitted that he then took Weyrick's wallet and guns, and left in the victim's car.

Maglio was charged as an adult offender with aggravated murder and aggravated robbery. A pretrial hearing was held on the admissibility of the two confessions, and the trial judge ruled that Maglio's rights were adequately explained, that he had "intelligently and knowledgeably" waived his right to counsel, and that the confessions were voluntary. They were admitted into evidence, and a jury found Maglio guilty of the lesser offence of murder and aggravated robbery.

On appeal, the Ohio Court of Appeals held that Maglio's *Miranda* rights had been violated by Traub's questioning, but that the error was harmless because it did not taint the subsequently recorded statements. It held that the later confession was not directly derived from the first, and that Maglio's rights had been thoroughly reexplained, so the second statement was not "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The court also relied on its conclusion that the police misconduct merely violated the "prophylactic" standards of *Miranda*, and did not abridge Maglio's constitutional rights. The Ohio Supreme Court refused to review the conviction.

On petition for habeas corpus relief, the district court took a different tack in denying Maglio relief. It decided that the oral statements to Traub were admissible, and thus that there was no need to consider whether the subsequent statement was tainted. The state appellate court had held that *Miranda* requires clear, unambiguous warning as to the rights of an accused, and it held that informing a suspect in one breath that he had a right to counsel and in the next that he could not have a lawyer until the next day was a "subtle deception, or at least misleading." The appellate court was following the lead of the Seventh Circuit Court of Appeals, which held in *United States ex rel. Williams v. Twomey*, 467 F.2d 1248 (7th Cir. 1972) that such warnings were inadequate:

> We hold that the warning given here was not an "effective and express explanation;" to the contrary, it was equivocal and ambiguous. In one breath appellant was informed that he had the right to appointed counsel during questioning. In the next breath, he was told that counsel could not be provided until later. In other words, the statement that no lawyer can be provided at the moment and can only be obtained if and when the accused reaches court substantially restricts the absolute right to counsel previously stated; it conveys the contradictory alternative message that an indigent is first entitled to counsel upon an appearance in court at some unknown, future time. The entire warning is therefore, at best, misleading and confusing and, at worst, constitutes a subtle temptation to the unsophisticated, indigent accused to forego the right to counsel at this critical moment.

*Id.* at 1250. The district court disagreed, noting that there is a split among the circuits on the question of whether such warnings are adequate, and that the Sixth Circuit had not decided the issue. The district court preferred to follow the lead of the Fifth Circuit, which held in *United States v. Lacy*, 446 F.2d 511 (5th Cir. 1971), that so long as the suspect was adequately informed that he did not have to answer questions without a lawyer, telling him that he would have to wait until later to talk to a lawyer did not violate his *Miranda* rights.

Both the Ohio Court of Appeals and the district court focused on the adequacy of the warnings given Maglio. However, we conclude that we need not decide whether the protective requirements of *Miranda* have been violated here. Rather, we hold that Maglio was denied his constitutional right to counsel, and his confessions were therefore improperly admitted. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

■ Once adversary proceedings begin against an individual, he or she has the right to legal representation when the government conducts an interrogation. The courts indulge in every reasonable presumption against waiver of that right, and

the burden of proof is on the State to show an "intentional relinquishment of a known right." *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Furthermore, the question of waiver is not one of historical fact, but of federal constitutional law. *Brewer, supra,* 430 U.S. at 402–404, 97 S.Ct. 1232.

■ The burden is on the State to establish waiver in every case in which it seeks to introduce a statement taken without the presence of counsel. That burden becomes far more difficult, if not impossible, to sustain when the record shows that a request for counsel was made which was not honored before questioning continued. Of course, there are times when it is not clear that a suspect is in fact asserting the right to counsel. Sometimes, a defendant may simply be seeking further information about his or her rights. *Miranda* gives some guidance, mandating that questioning must stop if the defendant "indicates *in any manner and at any stage of the process* that he wishes to consult with an attorney before speaking." 384 U.S. at 445, 86 S.Ct. at 1612 (emphasis added). We have little difficulty in finding that Maglio was attempting to assert his right to an attorney when he told Captain Traub that "maybe he ought to have one." In any case, Captain Traub clearly interpreted the comment as a request for an attorney, since he immediately said the questioning would have to stop, and qualified his earlier offer of counsel by telling Maglio he would have to wait until the next day to have a lawyer appointed for him. Unfortunately, the Captain did not honor his own recognition of the law but continued to probe until he obtained a confession. The only plausible object of Traub's continued questioning was to break down the suspect's attempt to assert his rights and elicit a confession.

The question of whether a waiver of the right to counsel is possible once that right has been asserted, but before consultation with an attorney, has not been decided by this Court, and not directly by the Supreme Court. However, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 624 (1966), and *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (White, J., concurring), strongly suggest that there is a per se rule barring custodial interrogation of a suspect after a request for counsel has been made. In *Miranda* the Court said:

> If the individual states that he wants an attorney, the interrogation must cease *until an attorney is present.* At that time, the individual must have an opportunity to confer with the attorney and to have him present during *any* subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

384 U.S. at 474, 86 S.Ct. at 1628 (emphasis added). In *Mosley,* Mr. Justice White emphasized that while it may be permissible under certain circumstances to continue an interrogation after a suspect has asserted the right to remain *silent,* the same considerations do not apply when a request has been made for an attorney:

> [T]he reasons to keep the lines of communication between the authorities and the accused open when the accused has chosen to make his own decisions are not present when he indicates instead that he wishes legal advice with respect thereto. The authorities may then communicate with him through an attorney.

*Michigan v. Mosley,* 423 U.S. 96, 110 n. 2, 96 S.Ct. 321, 329, 46 L.Ed.2d 313 (White, J., concurring in result); *quoted with approval in Brewer v. Williams,* 430 U.S. 387, 405 n. 10, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). *Brewer* did not settle the issue, though it specifically avoided holding that Williams could not have waived his rights to counsel. The Court found that Williams had not waived his rights, even though Williams had already consulted with an attorney before questioning continued. Several of the Circuits have resisted accepting a per se rule, however. The Ninth Circuit, in a sharply divided en banc decision, *United States v. Rodriquez-Gastelum,* 429 F.2d 536 (9th Cir.), *cert. denied,* 401 U.S. 958, 91 S.Ct. 987, 28 L.Ed.2d 243 (1978), recently rejected such a reading of *Miranda. See also, Nash*

*v. Estelle*, 560 F.2d 652 (5th Cir.), *petition for rehearing en banc granted*, (Dec. 15, 1977).

If the police had reexplained Maglio's rights and then withdrawn, allowing the boy to consider his alternatives, and he had then initiated further communication with the police, we would be able to find a waiver, and would have to face the question of whether a per se rule governs a request for counsel. However, like the Supreme Court in *Brewer*, we do not consider this an appropriate case to decide the issue, since it is clear that Maglio did not waive his right to counsel. While the waiver analysis would, of course, be unnecessary if waiver is impossible, the well-established standards governing waiver enable us to dispose of this case without reaching the difficult issue which divided the Ninth Circuit in *Rodriquez-Gastelum*.

 In this case, not only has the State failed to show a knowledgeable and voluntary waiver, but all the facts established below demonstrate that Maglio was confused about his rights, uncertain whether he could have a lawyer appointed for him during questioning, and unsure of the role of the prosecutor who took his recorded statement. Maglio was told first that he had a right to counsel before any questioning, and when he expressed a desire to talk to a lawyer, was promptly told that if he couldn't afford a lawyer, he would have to wait until the next day to have one appointed for him. Then, with scarcely a pause, let alone a cessation of questioning, and without honoring his request for counsel, the police continued interrogation about the car, and the confession ensued. Despite its refusal to adopt a per se rule, the Fifth

Circuit recently recognized that when "a suspect requests to have counsel present during questioning, but the police ignore the request and continue interrogation until he finally confesses . . . a knowing and intelligent waiver is very difficult, if not impossible, to establish." *Government of Canal Zone v. Gomez*, 566 F.2d 1289, 1291 (1978). A request for counsel followed quickly by a waiver suggests confusion at best, especially when accompanied by potentially confusing warnings. Here, that possibility became even more disturbing when, a few minutes later, in the taped exchange with the prosecutor, Maglio affirmatively displayed his confusion about his rights.

This Court recently refused to find a waiver where the defendant "had no opportunity to receive initial advice of an attorney upon an express request, and the alleged waiver occurred only a short time after warnings were given and before any contract with the judicial system," noting that "the mere demonstration that the confession came without objection after a resumption of questioning is inadequate evidence of waiver." *United States v. Charleton*, 565 F.2d 86, 91 (6th Cir. 1977). Maglio's age,[3] and his subsequent recorded conversation are added factors which further militate against a finding of waiver in this case. "A heavy burden was upon the [State] and it was not met." *Id.*, at 91.

 The fact that Maglio's rights were twice explained to him does not, in our opinion, sustain the State's burden to prove "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023. A suspect must not be forced to

---

**3.** While the fact that Maglio was only 16-years-old at the time of his confession does not necessarily impede his ability to make an intelligent and voluntary waiver, his age is nonetheless an important factor to be considered in determining whether he actually did so waive his rights. We are guided by the Supreme Court's admonition in *In re Gault* that "[w]ith respect to juveniles, both common observation and expert opinion emphasize that the 'distrust of confessions made in certain situations' . . . is imperative in the case of children from an

early age through adolescence." 387 U.S. 1, 48, 87 S.Ct. 1428, 1454, 18 L.Ed.2d 527 (1967) (15-year-old boy in a juvenile proceeding). Furthermore, even "[i]f counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was *not the product of ignorance of rights* or of adolescent fantasy, fright or despair." *Id.*, at 55, 87 S.Ct. at 1458 (emphasis added).

constantly and vigorously assert his or her right to counsel in order to counter a finding of waiver, especially when the suspect is only sixteen years old. As in *Brewer v. Williams*, it is true that Maglio "had been informed of and appeared to understand his right to counsel. But waiver requires not merely comprehension but relinquishment." 430 U.S. at 404, 97 S.Ct. at 1242. Any argument that Maglio had knowingly changed his mind immediately after asserting his right to counsel, since he submitted to continued questioning without protest, is refuted by the confusion he displayed at the taped interview a few minutes later.

■ Maglio's second statement includes an exchange, set out above, which indicates that he understood, for the first time, that he had a right to have an attorney appointed for him and present during questioning. However, he proceeded to repeat his earlier confession. The State argues that even if the earlier confession was inadmissible, the later statement, following a careful reexplanation of Maglio's rights, should be admissible. We commend the care with which the prosecutor explained Maglio's rights to him, but nonetheless, the request to see an attorney remained unhonored, and the taped interrogation followed within less than an hour of the illegal questioning. Furthermore, a graphic illustration of the validity of the "cat out of the bag" theory of *United States v. Bayer*, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947) is contained in Maglio's comments, once he finally understood his rights:

"Q. Okay, I have just explained what your rights are, and, Dan I am going to ask you this, Dan, at this time. Do you wish to go ahead and tell us what you know about this death of Walter Lee Weyrick and talk to us now without a lawyer present?"

"A. Am I just supposed to start talking or?"

"Q. No, do you want to talk to us without a lawyer being present?"

"A. Yes. You two are lawyers anyway."

"Q. Yes, but I'm, do you want a lawyer yourself before you talk to us? You have to say no, you can't just shake your head."

"A. Yea, I know, I forgot. It doesn't matter now."

"Q. In other words, you are willing at this point to go ahead and tell Mr. Rodgers and myself about what happened out there without having your own lawyer here with you, is that correct?"

"A. Yea, it's the same story, it doesn't much matter."

Not knowing that his prior statement was inadmissible, Maglio by this time had no reason to persist in his attempts to obtain counsel, since he had already incriminated himself. In his own words, "It's the same story, it doesn't much matter." The Supreme Court in *Bayer* noted:

> Of course, after an accused has once let the cat out of the bag by confession, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as a fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed.

*Id.*, at 540–541, 67 S.Ct., at 1398. In this case, the condition which makes the first confession inadmissible, the failure to provide counsel to an accused during an interrogation, had not yet been removed. Therefore, the recorded statement is equally inadmissible.[4]

Since Maglio's confessions were improperly introduced at his trial, having been obtained in violation of his constitutional right to the assistance of counsel, a new

---

4. The State has not contended that the admission of the two statements was harmless error if both of them were obtained improperly.

trial is necessary. It is therefore ordered that the case be remanded to the district court for entry of an order providing that petitioner's conviction be set aside, and that within sixty days he be retried, failing which the writ of habeas corpus shall be made absolute, and petitioner released from custody.