Eutues **WHITE**, Petitioner-Appellant,

v.

Fred **FINKBEINER**,
Respondent-Appellee.

No. 79–1563.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 13, 1979.

Decided Dec. 7, 1979.

Rehearing and Rehearing In Banc
Denied Feb. 15, 1980.

Kenneth L. Jones, Asst. State Appellate Defender, Ralph Ruebner, Deputy Appellant Defender, Chicago, Ill., for petitioner-appellant.

Kathleen M. Lien, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before SWYGERT, SPRECHER, and WOOD, Circuit Judges.

SWYGERT, Circuit Judge.

Petitioner-appellant Eutues White appeals from the judgment of the district court which denied his claim for habeas corpus relief under 28 U.S.C. § 2254. The basis of White's petition is that a confession admitted at his murder trial was obtained in violation of his rights under the Fifth Amendment as interpreted in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Specifically, White contends that the interrogation which led to his confession occurred after he had made a request for counsel. The issues presented for decision are whether White made a request for counsel and if so, whether this request was waived. We hold that a request for counsel was made, but that this request was waived.

I

White was convicted by a jury of murder,[1] with the prosecution relying primarily upon his confession. At a suppression hearing held prior to trial, White challenged the admissibility of this confession. The trial court denied the motion.

On appeal, the Illinois Appellate Court ordered that a new suppression hearing be held.[2] This hearing was held and the confession was again found to be admissible.[3] On appeal, the Illinois Appellate Court affirmed this judgment.[4] The Illinois Supreme Court affirmed this decision[5] and the United States Supreme Court denied certiorari.[6]

Thereafter, White petitioned the district court for a writ of habeas corpus. Without holding a hearing, the district court denied the application for a writ. On appeal, this court remanded for an evidentiary hearing to determine: 1) whether the appellant requested counsel when he was in custody; 2) whether there was a waiver of the request for counsel; 3) whether the officers acted in good faith in obtaining the confession; 4) whether the reasoning of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 precludes federal habeas corpus relief.[7]

On remand the district court held an evidentiary hearing. The district court made findings of fact and conclusions of law. The district court concluded that White did not make a request for counsel. At most, the district court found that White stated that "I'd rather see an attorney."[8] The district court also found that the confession was voluntary. Because no violation of petitioner's rights was found the district court declined to decide whether *Stone v. Powell* precludes habeas corpus relief for violations of the *Miranda* rules. We affirm the judgment of the district court but do so on different grounds. We conclude that a re-

1. The trial judge sentenced White to not less than 199 years but not more than 200 years. Originally, the jury had recommended that the death sentence be imposed. However, the trial judge chose not to impose that sentence.

2. The appellate court remanded for a determination of whether *Miranda* rights were given. *People v. White,* 10 Ill.App.3d 914, 295 N.E.2d 300 (1973).

3. White was resentenced to not less than 66 nor more than 198 years.

4. *People v. White,* 22 Ill.App.3d 180, 317 N.E.2d 323 (1974).

5. *People v. White,* 61 Ill.2d 288, 335 N.E.2d 457 (1975).

6. *White v. Illinois,* 424 U.S. 970, 96 S.Ct. 1469, 47 L.Ed.2d 738 (1976).

7. *White v. Finkbeiner,* 570 F.2d 194 (7th Cir. 1978).

8. The Illinois Supreme Court held that White did indeed request counsel but nonetheless found that the confession was admissible. The court stated that "[The] testimony unmistakably established that the defendant requested counsel." The district court disagreed with this conclusion in its finding of fact.

quest for counsel was made but that White waived this request.[9]

## II

White was arrested in East St. Louis, Illinois on May 24, 1969. The arrest was for an offense unrelated to the murder for which he was eventually convicted. It appears that the arrest occurred sometime in the morning. After arriving at the police station, a Captain Johnson read White his *Miranda* rights. At this time a short conversation occurred between Johnson and White. Apparently Johnson sought to determine if he knew White and also asked White if he wanted to talk about why he was in custody. The exact words are not certain, but White responded in substance that "I'd rather see an attorney." [10] Johnson never notified the other officers of this request nor made note of it. Apparently, Johnson merely considered this an invocation of the right to remain silent.[11]

Between May 24 and May 26, White was never given an attorney. Also, during that time he was subject to several interrogations by the investigating officers, a lineup, and a palm print. During the interrogation of May 25 White signed waiver forms and also signed typed confessions to other crimes.[12] Before each separate interrogation the officers gave White his *Miranda* rights. White indicated that he understood these rights. On May 26, White was again interrogated, given his *Miranda* rights, and signed a waiver of rights form and a confession typed out by one of the interrogating officers. The officers were not aware of White's prior remark requesting counsel nor did White at any time state that he now wanted counsel appointed nor that he had previously requested counsel. There was testimony that when White was asked if he wanted counsel, he responded in substance "I don't need a lawyer." After signing the confession White and several officers returned to the scene of the crime and reenacted the crime.

## III

The initial inquiry is whether White made a request for counsel. The district court found that no "clear or unequivocal request" for counsel was made.[13] But it

---

**9.** Of course, our decision to affirm the district court makes our resolution of the *Stone v. Powell* issue unnecessary.

**10.** The testimony on this point is in conflict. At the suppression hearing, held after remand from the Illinois Appellate Court, Captain Johnson testified that White said, in response to a question as to whether he wished to tell why he was incarcerated, that "I'd rather see an attorney." However, after a recess at the hearing Johnson was recalled and testified that White never said anything about an attorney but only that Johnson thought that White merely invoked his right to silence. At the evidentiary hearing White testified that during this recess Johnson conferred with the state's attorney. Thus, Johnson substantially altered his testimony. Johnson's testimony at the evidentiary hearing added little to clarify this point. This is understandable, considering that the incident Johnson described occurred almost ten years ago.

Unfortunately, White's testimony did little to explicate this matter. White did not testify at the suppression hearing ordered by the Illinois Appellate Court and at the trial White testified that he did not even remember being incarcerated. At the evidentiary hearing White testified that he had requested counsel. However, White was not exactly sure about what he said to Johnson. At times he said that he told Johnson "I want to see an attorney" while at another time he said that he told Johnson "I'd rather see an attorney."

Thus, the testimony on this point is extremely muddled. While the district court did find that White did not request an attorney it did basically find as a fact that White said in substance "I'd rather see an attorney."

**11.** It was the practice of the East St. Louis police department to honor a request for counsel and notify all investigating officers of the request.

**12.** From the record it appears that White was never tried for these other crimes.

**13.** The district court cited no authority for the proposition that a request for counsel must be "clear and unequivocal." Indeed, the language contained in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is to the contrary.

The standard of review for the determination of whether the district court's finding of the facts as to the conversation between Johnson and White is the clearly erroneous standard. However, whether the statements made were actually a request for counsel is a legal deter-

does appear that White did state in some form that "I'd rather see an attorney." The district court, however, did not believe that this statement was an actual request for an attorney but rather an invocation of the right to remain silent.

In determining whether a request for counsel was made, the language of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is instructive.

> If [the accused] indicates *in any manner* and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. 384 U.S. at 444–45, 86 S.Ct. at 1612 (emphasis added).[14]

■ Thus, *Miranda* teaches that the request for counsel need not be explicit. Rather it must be determined if there was an indication "in any manner" that the accused desired to consult with an attorney.

■ The prosecution insists that the focus of the inquiry should be on the totality of the circumstances in which the statement was uttered—Johnson did not have the direct responsibility for investigating the case and only spoke to White for a short amount of time. The district court agreed with this analysis and concluded that under the circumstances, Johnson's conclusion that an attorney was not requested was reasonable.

We reject the application of this approach to the facts before us. This approach places too much emphasis on the subjective interpretation of the police officer and ignores the import of the words uttered by White. There may be certain instances where the officer may have properly concluded that a statement was not a request for a lawyer. *United States v. Botero*, 589 F.2d 430 (9th Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979) (request to call girlfriend not construed as request

for a lawyer). But in this instance White's statement that "I'd rather see an attorney" was a request for counsel. To require a person in custody to be even more specific would be to ignore the language in *Miranda* quoted above.

Other courts have had to determine whether a request for counsel has been made. In *United States v. De Leon*, 412 F.Supp. 89 (D. V. I. 1976) the suspect unsuccessfully attempted to call his lawyer. The suspect then stated that he would like to speak to a lawyer but also stated that he was willing to make a statement. The court stated that this assertion could be interpreted as a willingness to give a statement after the attorney was present or as a waiver of the prior invocation. With such fundamental rights at stake, the court interpreted the statement in the light most favorable to the defendant and held that counsel had been requested. *See also Maglio v. Jago*, 580 F.2d 202 (6th Cir. 1978) ("Maybe I should have an attorney" considered a request for a lawyer); *United States v. Clark*, 499 F.2d 802 (4th Cir. 1974) ("I had better talk to a lawyer" considered a request for a lawyer).

Those cases which have discussed the significance of a request by a suspect for the recommendation of a lawyer are inapposite. *See, e. g., Collins v. Fogg*, 425 F.Supp. 1339 (E.D.N.Y.), *aff'd*, 559 F.2d 1202 (2d Cir.), *cert. denied*, 434 U.S. 869, 98 S.Ct. 210, 54 L.Ed.2d 147 (1977). The statement in the present case was much more of an affirmative request than the mere request for a recommendation of an attorney. We thus hold that White made a request for counsel.

### IV

■ The prosecution argues that even if there was a request for counsel, this request was later waived. As a preliminary matter we must decide if *Miranda* and *Michigan v.*

---

mination. Thus, the district court's finding on this matter is not due the same deference as the findings of fact.

**14.** In *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) the Supreme Court discussed, in *obiter dictum*, what words were sufficient to invoke a request for counsel under *Miranda*. The suspect in *Frazier* stated that "I

think I had better get a lawyer before I talk any more." The rule of *Miranda* was inapplicable to *Frazier* since the trial in *Frazier* had been held before *Miranda* was decided. However, the Court noted that if *Miranda* were applicable it might conclude that this was a request for a lawyer.

*Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) construct a *per se* rule requiring that there can be no questioning of a suspect after counsel is requested.[15]

In determining whether there should be a *per se* rule, the touchstone of the analysis is the language in *Miranda.* "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474, 86 S.Ct. at 1628.

Further support for the creation of a *per se* prohibition is the language contained in *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). *Mosley* concerned the interrogation of a suspect who had invoked his right to remain silent. The Court held that the police could interrogate a suspect who had previously invoked his right to remain silent. This resumption of questioning was proper only if the suspect's right to remain silent was scrupulously honored. In stating this rule, however, the Court did note that the procedure utilized after an initial request for counsel presented a different matter. That case, the Court stated, was governed by the requirement set down in *Miranda*—no further questioning until the attorney is present.

While the basic idea behind the Court's discussion in *Miranda* and *Mosley* is salutary, a *per se* approach may be going too far toward protecting the rights at stake. A *per se* rule which provided that a suspect could never waive a prior request for counsel would imprison a suspect in his privileges. *Cf. Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (cannot force trial counsel on defendant who wishes to proceed without counsel). This is not to say that continued interrogation or any coercion causing the suspect to waive the request need be condoned. Instead, it merely is an acknowledgement that in certain instances, for various reasons, a person in custody who has previously requested counsel may knowingly and voluntarily decide that he no longer wishes to be represented by counsel.

The creation of a *per se* rule would cause courts to lose touch with the purpose and policies behind the *Miranda* decision—a knowing and free exercise of constitutional rights.[16] Adoption of a *per se* rule would lead to a mechanical approach to the resolution of the particular cases we face. Thus, we eschew the *per se* rule and instead choose to adopt a case-by-case analysis in which the concerns which are reflected in *Miranda* and *Mosley* are incorporated into the analysis. *United States v. Rodriguez-*

---

**15.** White relies on *United States ex rel. Williams v. Twomey,* 467 F.2d 1248 (7th Cir. 1972) as creating such a *per se* rule. In *Williams* the suspect stated that he would like a lawyer before making a statement. The state's attorney dissuaded the appellant from having a lawyer. The court excluded this statement stating that the prosecution cannot continue its interrogation and not appoint counsel.

While *Williams* has been interpreted as setting forth a *per se* rule, *United States ex rel. Sanders v. Rowe,* 460 F.Supp. 1128 (N.D.Ill. 1978), this court did not explicitly hold that a waiver could never be obtained. Indeed, the issue of waiver was not even presented in *Williams.* Rather, the court had to determine whether the continued questioning after a request for counsel required that certain statements be inadmissible. Thus, to now hold that there is no *per se* rule does not require that *Williams* be overruled. The case is clearly distinguishable.

Also, it would be hard to understand how *Williams* could have created a *per se* rule in light of this court's decision in *United States v. Nielsen,* 392 F.2d 849 (7th Cir. 1968). In *Niel-*

*sen* the accused stated that he would not sign a waiver form until he could talk to his lawyer. Thereafter, the suspect continued to talk to the F.B.I. agents and expressed a willingness to talk. This court apparently treated the case as an invocation of the right to silence. However, there is language in the case indicating that the right to counsel can be waived.

**16.** A hypothetical case might demonstrate the folly of a *per se* rule. Consider the case where a suspect requests counsel and then is put in a cell. The suspect tells a guard who happens to pass his cell that he has changed his mind. He says that he does not want a lawyer and would like to confess. Certainly it serves no valid policy behind *Miranda* to refuse to accept the waiver. Indeed, it contravenes the idea in *Miranda*—that an individual should be able to freely exercise his rights.

While these are not the facts presented in this case they do illustrate the harm that our creation of a *per se* rule could do in future cases faced in this circuit.

*Gastelum,* 569 F.2d 482 (9th Cir.) (en banc), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978).

White relies on the language in *Mosley* which reaffirmed, in *dictum,* the procedure set forth in *Miranda.* We do not read that language in *Mosley* as governing this issue. Instead we note the broader message which pervades the *Mosley* decision; that is—the *Miranda* procedures are flexible and are not controlled by the specific language in that decision. Thus, looking at the broader import of *Mosley,* we refuse to read that case as constructing a *per se* rule. *United States v. Pheaster,* 544 F.2d 353 (9th Cir. 1976).

Those courts confronted with the issue of whether a *per se* prohibition on post-request statements should attach overwhelmingly have held that there is no *per se* rule. *United States v. Rodriguez-Gastelum,* 569 F.2d 482 (9th Cir.) (en banc), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978); *Nash v. Estelle,* 597 F.2d 513 (5th Cir. 1979) (en banc); *United States v. Grant,* 549 F.2d 942 (4th Cir.), *cert. denied,* 432 U.S. 908, 97 S.Ct. 2955, 53 L.Ed.2d 1081 (1977); *Cobbs v. Robinson,* 528 F.2d 1331 (2d Cir. 1975), *cert. denied,* 424 U.S. 947, 96 S.Ct. 1419, 47 L.Ed.2d 354 (1976).[17]

Therefore, we hold that *Miranda* and *Mosley* do not create a *per se* rule prohibiting a waiver and a resumption of questioning. However, we note that the state has a heavy burden of proving waiver. We now proceed to discuss the various components of this waiver test and its application to the case before us.

## V

■ The general test for waiver of an individual's constitutional right is whether the government has shown "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed.

1461 (1938). Besides consideration of the background, experience, and conduct of the accused, courts which have had to determine if a request for counsel has been waived have attempted to focus on other factors in analyzing the content of the *Johnson* test. *United States v. Rodriguez-Gastelum,* 569 F.2d 482 (9th Cir.), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978).

One such factor is whether the suspect initiated the contact which led to the statement being made. *See Maglio v. Jago,* 580 F.2d 202 (6th Cir. 1978); *United States v. Grant,* 549 F.2d 942 (4th Cir.), *cert. denied,* 432 U.S. 908, 97 S.Ct. 2955, 53 L.Ed.2d 1081 (1977). The concern reflected in these cases is that when a suspect does not initiate the contact with the police, it is more likely that the decision to waive the previous request will be the result of coercion or pressuring.

Yet there is no reason to conclude that as a prerequisite to a waiver, the suspect must have always initiated contact with the police.[18] There may be instances where for some valid reason the police must contact the accused, and a confession follows this contact. *United States v. Wilson,* 571 F.2d 455 (9th Cir. 1978) (police procedure to inform accused of new charge and after this contact suspect indicated desire to talk). Of course, in those cases where the suspect does initiate the waiver, it will be much easier for the state to discharge its heavy burden of proving waiver. But this does not mean that where the police contact the suspect after a request for counsel the prosecution is prohibited from ever demonstrating a waiver.

■ We believe that under the particular circumstances of this case the fact that the police initiated contact with White does not prohibit a showing of waiver. The record indicates that White was subjected to interrogation after the request. But it is also

---

**17.** The Sixth Circuit has refused to reach the issue. *Maglio v. Jago,* 580 F.2d 202 (6th Cir. 1978), holding that on the facts presented no waiver was made.

**18.** The Ninth Circuit has explicitly rejected a rule which would require, as proof of waiver,

that the accused initiated the waiver. The court believed that such a rule would be tantamount to adopting the *per se* rule that it chose to reject. *United States v. Rodriguez-Gastelum,* 569 F.2d 482 (9th Cir.), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978).

clear that this decision was made without any knowledge of the original request for counsel. Thus, we do not have a case where it is known by all the investigating officers that the suspect has requested counsel.[19] Rather, the request for counsel was an offhand request that was not passed on to the investigating officers.[20] The decision of the investigating officers to resume interrogation was caused solely by the unique circumstances which transpired at the time White was brought before Johnson: Johnson was not the investigating officer; White's request for counsel was off-hand; and the meeting lasted only several minutes.

■ Another factor which can indicate that a waiver was executed was the time delay between the original request and the interrogation. Courts have viewed a waiver which follows soon after the initial request as suspect. *United States v. Grant,* 549 F.2d 942 (4th Cir.), *cert. denied,* 432 U.S. 908, 97 S.Ct. 2955, 53 L.Ed.2d 1081 (1977); *United States v. Nixon,* 571 F.2d 1121 (9th Cir. 1978); *Government of Canal Zone v. Gomez,* 566 F.2d 1289 (5th Cir. 1978). A waiver obtained in such a case is likely to be the result of continued comment or questioning by the authorities. *United States ex rel. Williams v. Twomey,* 467 F.2d 1248 (7th Cir. 1972). A time lapse between the request for counsel prevents this badgering or harassment. Also, it gives the suspect time to reconsider his prior decision and evaluate the situation without the presence or prodding of officials.[21] *United States v. Lewis,* 425 F.Supp. 1166 (D.Conn. 1977).

■ In the present case, White was immediately returned to his cell after the request for counsel. Interrogation for the particular crime with which he was charged did not occur until two days later. During this time White had an opportunity to reflect on his previous request.

It might be contended that the incarceration had a coercive effect on White. We reject that argument. Our reading of the record indicates that after White requested counsel, he never again expressed a concern over the failure to have counsel appointed. In fact, during his interrogation and after being given his *Miranda* warnings, he stated that "I don't need a lawyer."

We are mindful of the language in *Miranda* which warns of the coercive effect of incommunicado interrogation. But in every instance in which a suspect is held in jail it does not follow that there was in fact coercion. Instead, each case must depend on the specific facts presented to the court in the record.[22] For us to hold that incarceration always leads to coercion would be to ignore the facts of this case. Thus, it cannot be said that the time delay had a coercive effect upon White.

Finally, we note several other key factors which lead us to conclude that on the facts

**19.** Thus, a different case might be presented where the accused makes a clear request for counsel which is transmitted to all involved officers. A decision to resume interrogation in that case would require a different analysis.

**20.** We do not mean to say that a request to a non-investigating officer is without import. To the contrary, in the ordinary case the accused may be arrested by non-investigating officers. A clear request made in those cases will be imputed to all of the officers. In the present case because of the nature of the exchange the request was not passed on.

**21.** The emphasis that we put on particular factors in this case does not necessarily mean that the presence or absence of the factor in a future case will be determinative. For instance, we note here that a time delay can be a factor in a finding of waiver. However, we do not condone the practice where the authorities

know a request for counsel has been made and merely wait a period of time to resume questioning. As noted above we deal here with officers who were understandably unaware of the request for counsel. We do not interpret *Mosley* to require a *per se* rule. However, we are cognizant of the differences between the request for counsel and an invocation of the right to remain silent and do not necessarily approve of the use of parallel procedures in the two cases.

The waiver analysis is one which depends on the totality of the circumstances.

**22.** This distinguishes the present case from *United States v. Womack,* 542 F.2d 1047 (9th Cir. 1976). In *Womack* the suspect made several requests for counsel. These requests went unhonored and the next morning the suspect was again questioned. The suspect testified that a new request was not made because he

of this case a waiver was executed. Before each separate interrogation White was given *Miranda* warnings. *United States v. Evans,* 575 F.2d 1286 (9th Cir.), *cert. denied,* 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160 (1978). *But see Maglio v. Jago,* 580 F.2d 202 (6th Cir. 1978). The waiver of these rights was a signed waiver. Also, the confession was signed by White. *United States v. Lewis,* 425 F.Supp. 1166 (D.Conn. 1977). We also note that while White did not explicitly waive his previous request for counsel, his comment "I don't need a lawyer" is very close to an explicit waiver. *United States v. Rodriguez-Gastelum,* 569 F.2d 482 (9th Cir.), *cert. denied,* 436 U.S. 919, 98 S.Ct. 2266, 56 L.Ed.2d 760 (1978).

In conclusion, we hold that in this case White waived his request for counsel. The officers who interrogated White were never informed of the request for counsel. This is understandable considering the peculiar nature of the colloquy between White and Johnson. The waiver was not the result of coercion nor the result of interrogation which immediately followed the initial request. Finally, White was given his *Miranda* warnings several times, signed a written waiver of these rights, and made what was almost an explicit waiver of his prior request for counsel.

The judgment of the district court is affirmed.

HARLINGTON WOOD, Jr., Circuit Judge, concurring.

I concur in the result, but also I agree with Judge Morgan's interpretation of the

defendant's brief conversation with Johnson. Considering the conversation and the circumstances in which the conversation took place, I do not construe it as a request for counsel, but at most as only a way of telling Johnson the defendant did not care to talk to him. In discussing waiver, Judge Swygert notes that after the Johnson conversation the defendant never again expressed concern over lack of counsel. If there was in fact a quick change of mind by defendant as to the need for counsel, it appears to have occurred without reason or explanation. I am satisfied that there was no change of mind. The defendant's obvious lack of concern about having counsel expressed shortly after the Johnson conversation is entitled to some weight in interpreting that conversation.

was scared and believed that since his previous requests had been ignored it would be futile to again request counsel. The court held that there was not a waiver and concluded that a new request was not made because the suspect thought that such a request would again be ignored.

Unlike *Womack,* White did not make several unequivocal requests for counsel but rather one off-hand comment to a non-investigating officer. Also, in the present case there was no testimony by White about the failure to again request counsel or the fear of incarceration. White would urge that we presume such ill effects from the incarceration. In certain cases

such coercion may be evident from the conditions of the incarceration even absent such testimony. However, these conditions are not present in this case.

Our belief that the effect of a time lapse turns on the particular facts is demonstrated by contrasting *Womack* with *United States v. Evans,* 575 F.2d 1286 (9th Cir.), *cert. denied,* 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160 (1978)—both Ninth Circuit cases. In *Evans* the suspect requested counsel but never had an opportunity to meet with counsel. Interrogation resumed the day after the arrest and a confession was taken. The court held that a waiver was executed.