Eutues **WHITE,** Petitioner-Appellant,

v.

Fred **FINKBEINER,**
Respondent-Appellee.

No. 79–1563.

United States Court of Appeals,
Seventh Circuit.

Jan. 15, 1985.

Ralph Ruebner, Chicago, Ill., for petitioner-appellant.

Kathleen M. Lien, Asst. Atty. Gen., Dale M. Bennett, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before WOOD, Circuit Judge, and SWYGERT and PELL, Senior Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Pursuant to an order of the Supreme Court,[1] this case is before us for the fourth time. The history of this protracted litigation dates to 1978, when this court reversed the district court's denial of petitioner-appellant White's application for habeas corpus relief and remanded the case for an evidentiary hearing on White's fifth amendment claim that his uncounseled confession, obtained during custodial interrogation after he allegedly requested that counsel be present, was inadmissible at trial under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[2] On remand, the district court again denied habeas corpus relief, finding that White had not requested that counsel be present during the custodial interrogation and concluding that White's confession was admissible under *Miranda*. The district court's judgment was affirmed on appeal.[3] Although we rejected the district court's determination that White had not invoked his right to have counsel present, we held that White subsequently validly waived this right. The Supreme Court vacated this judgment and remanded the case, directing us to reconsider our decision in *White II* in light of its decision in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[4] We subsequently issued our third opinion in this case, in which we reversed the district court's judgment denying habeas corpus relief and remanded with instructions to issue the writ and order White's release unless he was retried within 90 days of the issuance of this court's mandate.[5] We concluded that *Edwards*, in which the Supreme Court held that a suspect who has invoked his right to have counsel present during a custodial interrogation will be deemed to have waived that right only when he initiates subsequent communication with law enforcement officials, completely undermined our holding in *White II*. The Supreme Court again vacated our judgment and remanded the case for reconsideration in light of its decision in *Solem v. Stumes*, —— U.S. ——, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), a task to which we now turn.

### I.

The sole issue before the Court in *Solem* was whether its decision in *Edwards* should be applied retroactively. Employing the analysis set forth in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), *Tehan v. Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), and *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966),[6] the Court determined the *Edwards* decision should not be so applied. The Court concluded that the *Edwards* decision did not announce a new constitutional principle designed to enhance the accuracy of the truthfinding function, a factor that would militate in favor of its retroactive application, but a "prophylactic rule designed to implement pre-existing rights." *Solem*, 104 S.Ct. at 1343. That a suspect has requested a lawyer does not mean that his subsequent statements are likely to be inaccurate. "[W]here renewed interrogation raises significant doubt as to the voluntariness and reliability of the statement and, therefore, the accuracy of the outcome at trial, it is likely that suppression could be achieved without reliance on the prophylactic rule adopted in *Edwards*." *Id.*, 104 S.Ct. at 1342. The Court further found that, because *Edwards* was not "distinctly" foreshadowed by earlier case law, law en-

---

1. *Fairman v. White*, —— U.S. ——, 104 S.Ct. 1433, 79 L.Ed.2d 756 (1984).

2. *White v. Finkbeiner*, 570 F.2d 194 (7th Cir. 1978) ("*White I*").

3. *White v. Finkbeiner*, 611 F.2d 186 (7th Cir. 1979) ("*White II*").

4. *White v. Finkbeiner*, 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981).

5. *White v. Finkbeiner*, 687 F.2d 885 (7th Cir. 1982) ("*White III*").

6. "The criteria guiding resolution of the [retroactivity] question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, (c) the effect on the administration of justice of a retroactive application of the new standards." *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967).

forcement authorities could not be expected to have anticipated the decision. *Edwards,* the Court determined, "was not a necessary consequence of *Miranda.*" *Solem,* 104 S.Ct. at 1344. Prior to *Edwards,* it justifiably could have been held that a waiver of the right to counsel following its invocation could be deemed voluntary even though law enforcement authorities had initiated the communication. *Id., citing, inter alia, White v. Finkbeiner,* 611 F.2d 186, 191 (7th Cir.1979), *vacated,* 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981). Lastly, the Court found that retroactive application of *Edwards* would have a disruptive effect on the administration of justice. *Edwards* might affect the admissibility of statements made to the police in a large number of cases. The assessment of the substantiality of these *Edwards* claims and possible retrials "would be hampered by problems of lost evidence, faulty memory, and missing witnesses." *Solem,* 104 S.Ct. at 1345, *citing Jenkins v. Delaware,* 395 U.S. 213, 220, 89 S.Ct. 1677, 1681, 23 L.Ed.2d 253 (1969).

## II.

■ As a threshold matter, we note that White suggests in a conclusory fashion that respondents-appellees have "waived any argument concerning a limitation on the applicability of *Edwards* " because they failed to argue that *Edwards* should not be applied retroactively either in their Rule 19 statement filed with this court following the Supreme Court's remand of *White II* for further consideration in light of *Edwards* or in their petition for a writ of *certiorari* filed with the Supreme Court following our decision in *White III* holding that White was entitled to habeas corpus relief under *Edwards.*

White neither cites cases nor develops even a rudimentary argument in support of this novel waiver theory. We therefore would be entitled to decline to consider the issue. Nevertheless, we address it and find it to be without merit.

This court has not hesitated to hold the government to a strict waiver standard in cases in which it attempts to raise on appeal factual issues that it failed to present to the district court. In a case recently before us on remand from the Supreme Court for reconsideration in light of one of its decisions, we rejected the government's attempt to argue at that late date that law enforcement officers had probable cause for the detention of the defendant's luggage; we held that the government, which had argued in the trial court for the admission of the cocaine found in the luggage solely on the ground that the officers had reasonable suspicion to detain the luggage, had waived its right to contend on remand that probable cause in fact existed. *Moya v. United States,* 745 F.2d 1044 (7th Cir. 1984).

The circumstances presented here do not even arguably fall within the parameters of this waiver doctrine. Respondents-appellees are not attempting to present for the first time on remand a factual issue, relevant to the merits of White's constitutional claim, which could have been raised in the district court. Indeed, they are not even attempting to argue for the first time on remand that *Edwards* should be given prospective application only. Rather, the Supreme Court has remanded this case for reconsideration in light of *Solem,* in which it decided that *Edwards* is not to be applied retroactively. The Court has exercised its jurisdiction and remanded this case for reconsideration in light of *Solem* despite the fact that respondents-appellees did not present the nonretroactivity question in their petition for a writ of *certiorari.* In effect, the Court *sua sponte* has ordered us to reconsider *White III* in light of *Solem.* To find a waiver in this case would be to nullify the Supreme Court's exercise of its jurisdiction and to circumvent its remand order. We appropriately decline to do so.

## III.

■ We now address White's argument concerning the scope of *Solem's* nonretroactivity holding. The *Solem* Court stated that "[a]t a minimum, nonretroactivity

means that a decision is not to be applied in collateral review of final convictions." *Solem*, 104 S.Ct. at 1345. White's petition for a writ of habeas corpus is, of course, a collateral attack on his final conviction. The literal language of *Solem* mandates the conclusion that *Edwards* is not to be applied in this case.

Nevertheless, White asks this court to carve out an exception. Specifically, White contends that he presented an *Edwards*-type claim to the United States Supreme Court in his petition seeking a writ of *certiorari* to the Supreme Court of Illinois, 61 Ill.2d 288, 335 N.E.2d 457 (1975), the final step in the process of direct appellate review of his criminal conviction.[7] Therefore, he is not seeking relief on this claim for the first time on collateral review, the situation he contends the above-quoted language in *Solem* was intended to avoid. In essence, White would have this court apply *Edwards* on collateral review of final convictions in cases in which the petitioners raised at some point in the process of direct appellate review the same claim the Supreme Court only later found meritorious in *Edwards*.

This novel argument must be rejected. The determination of exactly where the nonretroactivity line should be drawn is informed by the retroactivity analysis itself. *See Johnson v. New Jersey*, 384 U.S. at 732, 86 S.Ct. at 1780. White's approach is totally inconsistent with the retroactivity analysis undertaken in *Solem*. The *Solem* Court determined not only that a violation of the *Edwards* rule is unlikely to have affected the accuracy of the result of the criminal trial, but that it would be "unreasonable to expect law enforcement authorities to have conducted themselves in accordance with [*Edwards'*] bright line rule prior to its announcement," and that retroactive application of *Edwards* "would disrupt the administration of justice" by requiring assessment of *Edwards* claims in a large number of cases, many of which would have to be retried. *Solem*, 104 S.Ct. at 1345. These factors would militate in favor of application of *Edwards* only to trials begun after the decision was announced, or possibly only to those whose rights were violated after the *Edwards* decision was handed down.[8] We need not decide exactly where the line should be drawn, for it is clear that *Solem's* nonretroactivity analysis will not support application of *Edwards* on collateral review of a final conviction merely because the petitioner unsuccessfully sought, via a petition for a writ of *certiorari*, to have the Supreme Court render in his case what later became the *Edwards* decision. That petition was merely a step in the process of exhausting available appellate remedies, a condition precedent to habeas corpus review of his claim. To hold that exhaustion serves as the basis for an exception to the explicit command of *Solem* that *Edwards* is not to be applied on collateral review of final convictions is to undermine impermissibly the reasoning underlying the *Solem* decision.[9]

## IV.

White's fifth amendment claim, then, is to be evaluated in light of pre-

---

7. The Supreme Court denied *certiorari*. *White v. Illinois*, 424 U.S. 970, 96 S.Ct. 1469, 47 L.Ed.2d 738 (1976).

8. We note the *Solem* Court's warning that *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), "should not be read as holding that *Edwards* applies on direct review to interrogations occurring before it was decided." *Solem*, 104 S.Ct. at 1345 n. 9. The Louisiana Supreme Court has held that *Edwards* is not to be applied retroactively to cases that were on direct appeal when the decision was announced. *See State v. Shea*, 421 So.2d 200 (La.1982), *cert. granted*, — U.S. —, 104 S.Ct. 2167, 80 L.Ed.2d 551 (1984). *Contra Rose v. Engle*, 722 F.2d 1277

(6th Cir.1983), *petition for cert. filed sub nom., Tate v. Rose*, 52 U.S.L.W. 3829 (U.S. May 15, 1984) (83–1747) (*Edwards* to be applied retroactively to cases pending on direct appeal when it was decided).

9. White further suggests that because our decision in *White II* was vacated and remanded for reconsideration in light of *Edwards*, the application of *Edwards*, *i.e.*, reinstatement of our decision in *White III*, would not violate the nonretroactivity holding of *Solem*. Adoption of this approach would, of course, nullify the Supreme Court's subsequent order that we reconsider *White III* in light of *Solem*.

*Edwards* law. *Solem,* 104 S.Ct. at 1341. *See also United States ex rel. Karr v. Wolff,* 732 F.2d 615, 619 (7th Cir.1984). Respondents-appellees contend that *White II* reflects the state of the law in this circuit before *Edwards* was announced, and that *White II* should be adopted by this court as the final order in this case. White argues that *United States ex rel. Williams v. Twomey,* 467 F.2d 1248 (7th Cir.1972), rather than *White II,* reflects the state of the law in this circuit prior to *Edwards.* He reads *Williams* as establishing a *per se* rule that the right to the assistance of counsel can never be waived by a suspect whose initial request for counsel has not been honored. He characterizes *White II* as an aberration, and points out that the decision was vacated by the Supreme Court.

White apparently believes that because the decision in *White II* was vacated by the Supreme Court and remanded for reconsideration in light of *Edwards, White II* cannot possibly govern the outcome of the present remand and reconsideration of this case. This argument is wholly without merit. To state the obvious, that *White II* was vacated after the *Edwards* decision was announced and is no longer good law is irrelevant to the issue at hand. *White II* was established law in this circuit prior to May 18, 1981, the date of the *Edwards* decision, and was applied without question in other pre-*Edwards* cases. *See, e.g., Kennedy v. Fairman,* 618 F.2d 1242, 1246 (7th Cir.1980).

White also argues that *Williams,* "which correctly followed *Miranda* as re-emphasized in *Edwards,*" not only reflects the true state of the law in this circuit prior to *Edwards,* but also labels this circuit as one that espoused a *per se* rule. The latter proposition was specifically rejected in *White II,* and is no longer open to discussion. In *White II,* this court, per Judge Swygert, the author of the opinion and a member of the panel that decided *Williams,* concluded that *Williams* could not be read as establishing a *per se* rule that the right to counsel never can be waived. We declined to adopt such a rule and chose instead to adopt a case-by-case analysis of whether the right to counsel had been waived. We need not analyze the waiver question here. The panel in *White II* already has done so, and determined that on the facts of the case a valid waiver was executed.

In conclusion, evaluation of White's claim in light of the pre-*Edwards* case law in this circuit mandates reinstatement of our decision in *White II,* affirming the judgment of the district court denying White's application for habeas corpus relief.

SWYGERT, Senior Circuit Judge, dissenting.

I agree that if we are precluded from retroactively applying the rule of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), we must reinstate our decision in *White v. Finkbeiner,* 611 F.2d 186 (7th Cir.1979) ("*White II*"), in which we affirmed the denial of White's petition for habeas relief. Nevertheless, I would hold that the government here waived its right to contest the retroactive application of *Edwards.* Accordingly, I would uphold our decision in *White v. Finkbeiner,* 687 F.2d 885 (7th Cir.1982) ("*White III*"), in which we relied on *Edwards* to grant habeas relief.

I am willing to concede that the circumstances in *Moya v. United States,* 745 F.2d 1044 (7th Cir.1984), present a stronger case for the application of a strict waiver rule. But I do not see how that ends our inquiry. The majority's distinction between the circumstances here and those in *Moya* at best show that this is a more difficult case, not that a different result is necessary.

In *Moya* the government attempted to raise factual issues that were not presented to the district court. We therefore had no findings to review, and a remand for further findings would have been unfair given the time elapsed and given that the waiver was apparently a part of trial strategy. *See Moya,* 745 F.2d at 1047–1048. In the case at bar the newly-raised issue is purely one of law, and our ultimate decision re-

quires no further factfinding. That the resolution of the newly-raised issue here would be less burdensome on the courts as well as the adverse party is only one factor to be weighed, however. If such a consideration were dispositive, then issues of law could never be waived, which is surely not the case. *Cf.* Rubin, *Toward a General Theory of Waiver*, 28 U.C.L.A.L.Rev. 478, 478–79 (1981) (waiver is an ubiquitous concept, appearing in almost every area of law and in connection with almost every type of legal right).

As the long history of this case demonstrates, society has an interest in providing swift and final dispute resolution and in conserving judicial resources. By forcing litigants to raise issues or lose them, waiver doctrine facilitates the speedy and final resolution of disputes. Had the government raised the retroactivity issue when this case was remanded to us for reconsideration in light of *Edwards*, and had we been prescient enough to anticipate the rule of *Solem v. Stumes*, —— U.S. ——, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), this fourth *White* decision would have been unnecessary.[1] Absent "exceptional cases or particular circumstances ... where injustice might otherwise result," *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), I would hold that litigants waive issues of fact or law that are not raised in the proceedings in the appellate court that precede a Supreme Court remand.[2]

Applying this rule to the case at bar, I note that the government offers no justification for its failure to raise the retroactivity issue in *White III*, nor can it point to any

exceptional circumstances that might implicate the equitable principles announced in *Hormel*, 312 U.S. at 557, 61 S.Ct. at 721. Nor do I see how the government could have been the victim of unfair surprise in not anticipating that retroactivity is a viable issue. To be sure, "a legal system based on precedent has a built-in presumption of retroactivity," *Solem*, 104 S.Ct. at 1341, and this court in *White III* apparently proceeded on this presumption in the absence of any effort on the part of the litigants to contest retroactivity. But retroactive application of a new constitutional doctrine is not compelled, *Solem*, 104 S.Ct. at 1341, and ever since *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the issue has always been treated as an open question, *see Solem*, 104 S.Ct. at 1341; *United States v. Johnson*, 457 U.S. 537, 542, 102 S.Ct. 2579, 2583, 73 L.Ed.2d 202 (1982). I would hold that the government waived its right to contest the retroactive application of *Edwards* when it failed to raise the issue in *White III*.

The majority further reasons that the Supreme Court's remand for reconsideration notwithstanding the government's failure to raise the retroactivity issue in its petition for certiorari was an implicit mandate to reach the issue of retroactivity. Leaving aside the plain meaning of the language of the Supreme Court's order "for further consideration in light of" *Solem*[3] (as opposed to an order "for further consideration of the merits of" *White III* and "to apply the holding of *Solem* "), I do not believe the Supreme Court intended to constrain our reconsideration in this manner. For, if the majority's argument is

---

**1.** Even if we had held the *Edwards* rule to be retroactive, our opinion presumably would have aided the Supreme Court in its ultimate resolution of the issue. By allowing issues to percolate up through the various circuits, the Supreme Court is able to benefit from observing the treatment of issues in different contexts, the alternative resolutions of issues, and even the mistakes of appellate courts. The waiver doctrine facilitates this common law process by encouraging the parties to raise issues in the appellate courts before reaching the Supreme Court.

**2.** An important "particular circumstance" in considering whether to deem an issue of law waived is whether the viability of the issue is so much in doubt or so obscure that a Supreme Court remand to consider the issue is not reasonably foreseeable. As I note below, the retroactivity issue is one that routinely attends the announcement of a new constitutional doctrine, and therefore, the government here is not the victim of unfair surprise.

**3.** *Fairman v. White*, —— U.S. ——, 104 S.Ct. 1433, 79 L.Ed.2d 756 (1984).

correct, then on remand from *Edwards* in *White III* it would have been erroneous for us to refuse to reach the merits on the grounds that *Edwards* was not retroactive. Yet, in hindsight, that would have been precisely the correct thing to do.

Nor am I persuaded by the purported significance of the Supreme Court's decision to remand in spite of the government's failure to raise the retroactivity issue in its petition for certiorari. *See supra* at 543. Supreme Court precedent indicates that in some circumstances, equity will ignore a waiver. *See Hormel,* 312 U.S. at 557, 61 S.Ct. at 721. I would interpret the Supreme Court's remand not as an implicit mandate to ignore the waiver issue, but as an implicit acknowledgment that the waiver issue is always an open one. That is, our duty on remand is not to ignore the waiver issue, but to decide it for ourselves; the Supreme Court's decision not to dismiss the petition on waiver grounds was simply an act of prudence, inasmuch as a full reconsideration of the case might reveal circumstances that would make it inequitable to apply a strict waiver rule.

I do share some sympathy with the view that my proposed waiver rule could conceivably undercut the Supreme Court's attempt to enforce the nonretroactivity rule of *Solem. See supra* at 543. For if in most cases the government failed to raise the retroactivity issue during proceedings subsequent to *Edwards* and prior to *Solem,* the ultimate result would be to render *Edwards* retroactive *de facto.* But in the absence of any empirical data, we must be guided by Supreme Court precedent that indicates that ever since 1965, the retroactivity issue has been an open and foreseeable question, *see supra* at 546, and deduce from this that government lawyers were generally competent enough to raise the issue in most cases.

Because I believe the government waived its right to contest the retroactivity of *Edwards,* I respectfully dissent. I would uphold our decision in *White III,* in which we relied on *Edwards* to grant White habeas relief.