James Albert KENNEDY, Petitioner,

v.

Warden Thaddeus PINKNEY, Respondent.

No. 78–1234.

United States District Court, C. D. Illinois.

July 31, 1979.

Glenn O. Fuller, Decatur, Ill., for petitioner.

James A. Devine, Asst. Atty. Gen., Springfield, Ill., for respondent.

## DECISION AND ORDER

ROBERT D. MORGAN, Chief Judge.

An Illinois jury found petitioner guilty of rape, after a previous jury had been unable to reach a verdict on that charge while acquitting him of deviate sexual assault arising from the same incident. The Appellate Court of Illinois, Fourth District, affirmed the conviction, one justice writing a strong dissent, 60 Ill.App.3d 947, 18 Ill.Dec. 345, 377 N.E.2d 830 (1978). The Supreme Court of Illinois denied the petition for leave to appeal, 71 Ill.2d 612 (1978), and petitioner now seeks a writ of habeas corpus under 28 U.S.C. § 2254. He properly raises two issues, both decided against him at trial and on appeal: whether his right to counsel, as defined in *Miranda v. Arizona,*

384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny, was denied while in custody following his arrest; and whether the collateral estoppel principle of *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), prohibited introduction of evidence of the acts thought to constitute deviate sexual assault at his second trial for rape. Petitioner has moved for summary judgment under F.R.Civ.P. 56.

## I

### A.

Early on the afternoon of July 30, 1976, a sexual encounter occurred between petitioner, then the janitor at a house of worship in Decatur, Illinois, and the complainant, the secretary of the congregation. The Decatur police arrested petitioner at his home next door late that afternoon. After being booked, petitioner was taken directly to one of the offices in the detective division. An interview began at 7:40 p. m., by a reading to petitioner of the department's standard "Custodial Interview Advice" form. Petitioner also read a copy of the form silently, and he wrote and initialed notations on it as follows: (The "rights," etc., are shown as printed, with petitioner's notations shown in CAPITALS):

1. You do not have to make any statement at this time and have a right to remain silent.

### I DENY CHARGE

#### J.K.

2. Anything that you say can and will be used against you in a Court of Law.

### UNDERSTOOD AND STILL DENY CHARGE

#### J.A.K.

3. You are entitled to an attorney before any interview and to have an attorney present at the interview.

### I WANT ATTORNEY

#### J.A.K.

4. If you cannot afford an attorney, one will be appointed for you.

### UNDERSTOOD

#### J.A.K.

5. The above rights have been read by me and to me and I fully understand them. Understanding the above rights I wish to make a statement to the Police Officers interviewing me. WITH ATTORNEY PRESENT TODAY

Signature

/s/ J. A. KENNEDY

Petitioner also told the detectives orally that he wanted a lawyer present. One of these first two detectives later testified [1] that petitioner was then given the telephone and that he called an attorney, talked to him for a few minutes, hung up, and told the two detectives that the attorney had told him to talk to them. The other detective testified in more detail on this sequence of events: that petitioner said that he did not have any money and wanted an attorney appointed; that he was told this would require going to court the next day; that only then did he ask to call the attorney; and that when he hung up he said he was ready to talk. This interview lasted fifty minutes. Petitioner made no incriminating statements at that interview and denied any sexual contact with the complainant.

Petitioner was taken to a cell about 8:30 p. m., where he remained until 1:36 a. m., when he was again interviewed by another detective, who read petitioner his rights from the exact same form that had been used at the first interview, and which bore petitioner's notations. He did not have the petitioner re-initial the form and did not ask about the handwritten statements on it; but he testified that petitioner told him that he had talked to an attorney, who had

1. This and other testimony regarding the interviews is summarized from the transcript of the hearing of September 2, 1976, on the defendant's motion to suppress the statements which were eventually obtained.

advised him to talk to any detective. At this interview, which lasted until about 2:30 a. m., petitioner continued to deny any sexual involvement with the complainant on July 30, but admitted having kissed her on previous occasions.

At 9:30 a. m. on July 31, petitioner was again interviewed by a fourth detective. He again read to petitioner from the form with the handwritten demands for counsel, and again did not ask petitioner to re-initial or amend the form, but testified that petitioner told him he understood his rights. He testified that he asked petitioner about the demands written on the form, and whether he wanted an attorney, and that petitioner "declined and said no, he was perfectly willing to converse with me about the arrest." During this interview, which lasted about one hour and fifteen minutes, petitioner admitted to sexual activity between himself and the complainant the previous day, and to the possibility of oral-genital contact and penetration.

While petitioner contradicted much of the testimony of all four officers on what took place, this court, as did the state courts, credits their testimony on disputed points. Petitioner's explanation of talking, when he knew so well he didn't need to, was "by that point after my repeated request for an attorney, I was under the impression, well, anything I say now can't be used because they denied me my rights to an attorney."

### B.

Counsel was appointed to represent petitioner five days later, and a motion to suppress was filed. The court's detailed written order denying the motion reviewed the testimony summarized above and found that petitioner was properly advised of his rights "in apt time"; that he understood those rights; and that he "waived his constitutional rights by talking at all interviews in that at the first two interviews he talked with the officers and denied his guilt and at the third interview made admissions and exculpatory statements." The interviewing officers then testified about the statements made, over petitioner's renewed objection, at both trials. The Appellate Court majority noted that:

"the trial judge could have believed [the] officers * * * rather than the defendant and determined that the defendant freely decided to permit further interrogation after the phone call to the lawyer * * *. Furthermore, regardless of what the lawyer actually told the defendant, if the defendant actually told the officers that he had been advised to go ahead and talk, the officers were justified in considering that statement in determining whether to proceed." 377 N.E.2d at 834.

The court concluded that the trial court's factual determination was not contrary to the manifest weight of the evidence and therefore was not erroneous as a matter of law. *Id.*

### II

Petitioner concedes that the warnings given him at the first interview were adequate, but argues that his rights were violated before the disputed telephone call to the attorney was ever placed, because he clearly demanded counsel on the form and questioning continued without counsel present. He bases this argument on *Miranda* language, as follows:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an oppor-

tunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent. This does not mean, as some have suggested, that each police station must have a 'station house lawyer' present at all times to advise prisoners. It does mean, however, that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation. If authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they do not question him during that time." 384 U.S. at 473–74, 86 S.Ct. at 1627–1628.

 This passage, petitioner argues, obligated the police to cease all questioning as soon as he had demanded an attorney until one was present. This absolutist position must be rejected because the Supreme Court has implied strongly that an assertion of the right to counsel may be waived subsequently, without counsel having appeared, *Brewer v. Williams*, 430 U.S. 387, 406, 97 S.Ct. 1232, 51 L.Ed.2d 423 (1977), and the United States Court of Appeals for the Seventh Circuit has directly so held, *United States v. Springer*, 460 F.2d 1344, 1350 (7th Cir. 1972). Petitioner's assertion of his right to counsel did not make him a prisoner of that right, unable to waive it under any circumstances.

Respondent argues first that the trial court's findings of fact that petitioner waived his rights to silence and to counsel by talking are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). Second, respondent argues that the rationale of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), which precludes relitigation in habeas corpus proceedings of fourth amendment violations resolved against a defendant in the state courts, should be extended to fifth amendment violations of the *Miranda* procedural safeguards.

 The first argument must be rejected, because *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), makes clear that waivers of federal constitutional rights are to be judged by federal standards. They are, therefore, not simply factual findings within the meaning of § 2254(d). Further, the trial court's conclusion that petitioner waived his rights simply by talking makes it clear that such a basis does not comport with the statement in *Miranda* that "a valid waiver will not be presumed * * * simply from the fact that a confession was in fact eventually obtained." 384 U.S. at 475, 86 S.Ct. at 1629. Respondent's second argument that the prohibitory rule of *Stone v. Powell* should be extended to fifth amendment violations need not be reached, for in the view the court takes of this case, a *Miranda* violation did take place and petitioner's motion to suppress should have been allowed.

### III

 A primary tenet of *Miranda* is that if a defendant once asserts his right to consult with counsel, and "interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U.S. at 475, 86 S.Ct. at 1628. Our first inquiry, therefore, must be, not into the relative credibility of conflicting testimony of the circumstances surrounding the taking of a challenged statement (as the state courts apparently considered the issue to be), but whether the government's evidence, given full credence, is sufficient to demonstrate the knowledgeability and intelligence of the waiver. If it is not sufficient standing alone, it cannot be sufficient when judged against conflicting evidence of any credibility.

■ Petitioner's written statements on the form show clearly that he was asserting his right to counsel, not his right to remain silent. Indeed, he even indicated a limited waiver of his right to remain silent by stating that he would talk to the police "with attorney present today." A clearer assertion of the right to counsel, however, is difficult to imagine.

Accepting the four officers' testimony as true, however, a waiver of the right to counsel remains unestablished. Each of the two officers at the initial interrogation knew that defendant initially wanted counsel; this fact led to the telephone call to the attorney. Neither officer, of course, heard more than petitioner's end of the conversation, and neither testified as to any understanding of a waiver that they gained from his statements to the attorney on the telephone. Most significantly, however, both officers testified that he told them after hanging up the telephone that the attorney had told him to talk to the detectives, and *he was willing to talk*. Both testified that the questioning then resumed without interruption.

For the officers to decide on this alone, that petitioner had waived or withdrawn his previous vigorous assertion of right to counsel, they necessarily had to make several inferences. First, and most important, they had to infer that his statement that he was willing to talk included the basic change that he was willing to talk *without an attorney* present. Second, they had to infer that this inferred change of mind was knowing and intelligent. Third, they had to conclude from these first two inferences that he was thereby expressly waiving his previously asserted right to counsel, which he had asserted so clearly in the writing before them.

At the second and third interviews, the officers separately had to make similar assumptions to establish that petitioner waived the right to counsel, expressly asserted on the form, before they began to question him. Having no firsthand knowledge of the earlier discussions concerning counsel or of the telephone call, their only

knowledge of the situation came from petitioner's statements on the form and his oral statements to them. Neither officer, however, testified to any substantial inquiry to resolve the contradictions between the written and oral statements. In addition to the assumptions common to all three interviews, the final interrogator had to assume that the statement that petitioner was willing to talk "about the arrest" actually constituted a willingness to discuss all of the events of the previous afternoon and evening.

■ Because they were faced with such crystalline assertions of the right to counsel in writing, on their only written proof of advice of rights, the officers had a heavy burden to establish the voluntariness of the subsequent waiver, *Miranda*, 384 U.S. at 475, 86 S.Ct. 1062, 16 L.Ed.2d 694, which must be an intentional relinquishment or abandonment of a known right, *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In the circumstances presented here, the officers did not, as a matter of law, sustain this burden. The direct contradiction between the written and oral statements obligated them to inquire further to determine the voluntariness of the waiver. *United States v. Nielsen*, 392 F.2d 849, 853 (7th Cir. 1968). One cannot escape the view that the logic of *Miranda* requires that the clear assertion of a right requires a proportionally clearer showing of the voluntariness of a subsequent waiver. This may not require the officers to terminate the interview or to secure any specific form of waiver, but it does require, as has been said, "some form of inquiry designed to clarify the defendant's intentions. After the defendant's ambiguous remarks [indicating possible assertion of *Miranda* rights], only with the help of such a clarification could the government sustain its burden under *Miranda* of showing waiver." *United States v. Chansriharaj*, 446 F.Supp. 107, 109 (S.D.N.Y.1978).

■ A second line of reasoning also compels suppression of the challenged admissions. All of the interviewing officers knew that petitioner had wanted counsel.

The essence of this demand for counsel, unlike that of an assertion of the right to silence, is that petitioner had recognized his own inadequacy in the situation. · Any statement subsequently made "without counsel's presence may properly be viewed with skepticism." *Michigan v. Mosley*, 423 U.S. 96, 110 n.2, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), (White, J., concurring in result). Repeated grounds of questioning following clear assertion of the right to counsel, by analogy to Mr. Justice White's reasoning in *Mosley*, properly raise the level of skepticism, "particularly if no reason (such as new facts communicated to the accused or a new incident being inquired about) appeared for repeated questioning." *Id.* at 111, 96 S.Ct. at 330. Giving full credence to the officers' truthfulness and good faith, real skepticism of any willing waiver of right to counsel is amply justified here. Four police officers questioned petitioner on three occasions, over a fourteen-hour period, about the same incident, after he had initially unmistakably demanded counsel in writing. Yet none of the officers asked him to sign a waiver in writing, or re-initial the first form, or testified to having more than perfunctorily inquired into the obvious inconsistency between petitioner's oral and written assertions.

Therefore, the state did not meet its burden of showing waiver. It follows that any statements that petitioner gave at any of the three interviews, whether exculpatory or inculpatory, must be suppressed, *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), for it cannot be said beyond a reasonable doubt that their admission into evidence did not contribute to petitioner's conviction.

## IV

The second issue presented is that petitioner's acquittal of deviate sexual assault at the first trial precluded any testimony at the second trial of an act of deviate sexual conduct. He argues that the jury must have acquitted him because it found that no act of deviate sexual assault took place, and that, therefore, to introduce evidence of such an act constituted double jeopardy under the collateral estoppel principles of *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). However, the activities of the entire single incident remained relevant to the rape charge on retrial. *Ashe* does not preclude testimony of the act which could be said to constitute deviate sexual assault, because the Supreme Court there simply held that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194. Certainly an issue over oral-genital contact is not "ultimate" to a charge of rape, and testimony of such an act does not make it an issue being "litigated." Petitioner therefore was in no sense placed in double jeopardy on the charge of deviate sexual assault by introduction at the second trial of the complainant's testimony of oral-genital contact.

IT IS ORDERED, for the reasons stated above, that petitioner's Motion for Summary Judgment is ALLOWED and that the Petition for Writ of Habeas Corpus is SUSTAINED.

IT IS FURTHER ORDERED that the writ of release from custody shall not issue for a period of sixty (60) days pending an appeal herein or the pursuit of a new trial by the State of Illinois. In the event of the pursuit of new trial without appeal, the writ shall not issue until judgment is made in the last court in which it is finally submitted.

IT IS FURTHER ORDERED that in the event an appeal is perfected by the State within sixty (60) days of this order, the issuance of the writ shall be stayed pending the outcome of that appeal, provided the appeal is diligently prosecuted by the State of Illinois.

IT IS FURTHER ORDERED, pursuant to Fed.R.Civ.P. 25(d)(1), that Jay Fairman, current Warden, be substituted in his official capacity for Thaddeus Pinkney, as named defendant herein.

This court registers its appreciation to Glenn O. Fuller, Esq. for his services as

appointed counsel for petitioner in this proceeding.