James Albert **KENNEDY**, Petitioner-Appellee,

v.

Jay **FAIRMAN**, Warden, Pontiac Correctional Center, Respondent-Appellant.

No. 79–1957.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 15, 1980.

Decided April 11, 1980.

Melbourne A. Noel, Jr., Asst. Atty. Gen., Crim. Div., Chicago, Ill., for respondent-appellant.

Glenn O. Fuller, Decatur, Ill., for petitioner-appellee.

Before CUMMINGS, SPRECHER and TONE, Circuit Judges.

SPRECHER, Circuit Judge.

The question raised in this appeal is whether the district court erred in holding that the statements made by petitioner were obtained in violation of his right to counsel under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We hold that petitioner waived his right to counsel and reverse the judgment below.

## I

Petitioner, James Kennedy, was arrested on July 30, 1976 and charged with the rape and deviate sexual assault of a female with whom he worked at the Temple B'nai Abraham in Decatur, Illinois. On November 23, 1976, a jury acquitted him of the deviate sexual assault charge, but was unable to reach a verdict on the rape charge. A second jury found petitioner guilty of rape and the trial judge sentenced him to a term of fourteen to fifty years in prison. The Illinois Appellate Court affirmed, *People v. Kennedy*, 60 Ill.App.3d 947, 18 Ill.Dec. 345, 377 N.E.2d 830 (1978), and the state supreme court denied leave to appeal. 71 Ill.2d 612 (1978).

Having exhausted all of his state remedies, Kennedy petitioned the district court for a writ of habeas corpus. In support of the petition, he argued that police had violated his privilege against self-incrimination by eliciting statements from him despite his repeated requests for counsel.[1] The State argued that petitioner had knowingly waived his right to have counsel present. The district court rejected the State's argument and granted the writ, holding that petitioner had not waived his right to counsel.

In accordance with 28 U.S.C. § 2254(d),[2] the district court relied on the factual findings made by the state trial court, without conducting an evidentiary hearing of its own. Since the factual findings by the state court implicitly resolved conflicts in testimony in favor of the State's witnesses, the district court correctly did the same.[3]

1. Petitioner also argued that certain evidence relating to the deviate sexual assault charge had been introduced in his second trial in violation of the principles of collateral estoppel. The district court found that collateral estoppel did not apply to the evidence in question and petitioner has not appealed that finding.

2. 28 U.S.C. § 2254(d) reads in pertinent part:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record . . . . .

\* \* \* \* \* \*

3. While we might have resolved some of the conflicts differently, the state court observed the witnesses first-hand, and absent an evidentiary hearing in the district court, we must honor the state court's credibility choices. See 28 U.S.C. § 2254(d); cf. Fed.R.Civ.P. 52(a).

The relevant facts can be summarized as follows. After being arrested and booked, petitioner was taken directly to an office in the police station for interrogation. The first interview began at 7:40 p. m. It is undisputed that he was informed, both orally and in writing, of his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is also undisputed that he requested an attorney.

Petitioner was given a copy of the police department's standard custodial advice form on which he made and initialed the following statements:

1. You do not have to make any statement at this time and have a right to remain silent.

### I DENY CHARGE

J.K.

2. Anything that you say can and will be used against you in a Court of Law.

### UNDERSTOOD AND STILL DENY CHARGE

J.A.K.

3. You are entitled to an attorney before any interview and to have an attorney present at the interview.

### I WANT ATTORNEY

J.A.K.

4. If you cannot afford an attorney, one will be appointed for you.

### UNDERSTOOD

J.A.K.

5. The above rights have been read by me and to me and I fully understand them. Understanding the above rights I wish to make a statement to the Police Officers interviewing me. WITH ATTORNEY PRESENT TODAY

Signature

/s/ J. A. Kennedy

Quoted in *Kennedy v. Pinkney*, 473 F.Supp. 1279, 1281 (C.D.Ill.1979). After making these notations, petitioner made an oral request for an attorney. According to one of the interrogating officers:

Mr. Kennedy said he wanted an attorney and he wanted an attorney there at the time of the interview. He said he didn't have any money and he wanted the Court to appoint him an attorney. We advised him several times, three or four times that if he wanted a court appointed attorney, we would have to stop the interview and take him back downstairs and he would have to make a court appearance, that we couldn't get him a court appointed attorney at that time. He didn't seem to understand it and so we explained it three or four times and then he understood he couldn't have a court appointed attorney at that time.

Transcript of September 2, 1976, Hearing on Defendant's Motion to Suppress, at 13–14.

The officer then testified that petitioner was informed that "if he wanted to talk to us, he would have to get his lawyer down there." Transcript at 17. According to the testimony, the police gave petitioner a telephone book; after a few moments, he said he wanted to call Mr. Asher Geisler, an attorney and member of the congregation for the Temple where Kennedy and the complainant worked. Geisler told petitioner that he could not be with him at that time because he was conducting religious services at the Temple. All parties are in agreement on the facts up to this time. A dispute arises as to what petitioner told police after talking to Geisler, but since the state court credited the officers' testimony, we are bound by those findings.

According to the interrogating officers, petitioner told them that Geisler instructed him to speak with them. They therefore proceeded to question him about the rape. Petitioner denied any involvement with the complainant.

He was questioned again at approximately 1:30 a. m. the next day. A new interrogator gave him *Miranda* warnings, reading from the same form on which petitioner had written his request for an attorney. According to the officer, petitioner said he had spoken with an attorney and was will-

ing to talk. While some of the statements made during this second interview hinted at some involvement between petitioner and his co-worker, he still made no statement that amounted to a confession or admission of rape.

A third detective questioned petitioner again at approximately 9:30 a. m. As had each of the preceding officers, the detective read the *Miranda* rights from the custodial advice form. He testified that petitioner said he understood his rights and was willing to talk. When asked about his written comments on the form, petitioner said his attorney had advised him to talk. During this last interrogation, Kennedy admitted to having engaged in some sexual conduct with the complainant.

Petitioner's exculpatory statements in the first interview and his admissions in the third interview were introduced at trial.

## II

■ Petitioner argues that the failure of the interrogating officers to cease their questioning as soon as he requested a lawyer constituted a *per se* violation of his right to counsel. In the recent case of *White v. Finkbeiner*, 611 F.2d 186 (7th Cir. 1979), however, we laid to rest any speculation about whether this circuit followed a *per se* rule.[4] We stated:

A *per se* rule which provided that a suspect could never waive a prior request for counsel would imprison a suspect in his privileges. [citation omitted] . . . This is not to say that continued interrogation or any coercion causing the suspect to waive the request need be condoned. Instead, it merely is an acknowledgement that in certain instances, for various reasons, a person in custody who has previously requested counsel may knowingly and voluntarily decide that he no longer wishes to be represented by counsel.

*Id.* at 191.

■ Although the *per se* argument must fail, the State nevertheless bears the heavy

burden of proving that petitioner waived his right to counsel. See *Brewer v. Williams*, 430 U.S. 387, 404, 405 & n. 10, 97 S.Ct. 1232, 1242 & n. 10, 51 L.Ed.2d 424 (1977). The oft-quoted rule is that the State must show "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). According to the district court, the State's burden was particularly heavy in this case because petitioner had so clearly asserted his right to counsel and " 'no reason (such as new facts communicated to the accused or a new incident being inquired about) appeared for repeated questioning.' " *Kennedy v. Pinkney*, 473 F.Supp. at 1285 (C.D.Ill.1979), quoting from *Michigan v. Mosley*, 423 U.S. 96, 111, 96 S.Ct. 321, 330, 46 L.Ed.2d 313 (1975) (White, J., concurring in result). The district court stated that to meet this heavy burden, the officers should have had petitioner sign a waiver or re-initial the first form, as their perfunctory inquiry into the obvious inconsistency between his oral and written assertions was insufficient. At best, the court concluded, the facts as found by the state court showed that petitioner waived his right to remain silent, and *not* his right to counsel:

Petitioner's written statements on the form show clearly that he was asserting his right to counsel, not his right to remain silent. . . . A clearer assertion of the right to counsel, however, is difficult to imagine.

\* \* \* \* \* \*

One cannot escape the view that the logic of *Miranda* requires that the clear assertion of a right requires a proportionally clearer showing of the voluntariness of a subsequent waiver.

*Kennedy v. Pinkney*, 473 F.Supp. at 1284 (C.D.Ill.1979).

Relying on *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286

---

4. Petitioner argues that this court adopted a *per se* rule in *U.S. ex rel. Williams v. Twomey*, 467 F.2d 1248 (7th Cir. 1972). We specifically rejected such a contention in *White*. See *White v. Finkbeiner*, 611 F.2d 186, 191 n. 15 (7th Cir. 1979).

(1979), the State argues that the district court impermissibly focused on the form of the waiver. According to the State, "an explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to counsel guaranteed by the *Miranda* case." Brief of Appellant at 7.

■ While the State is correct in stating that an explicit waiver is not *invariably* necessary, we do not read *North Carolina v. Butler, supra,* to hold that it is *never* necessary. In *Butler,* the defendant was informed of his rights and said he understood them. He then agreed to speak to the interrogator, but would not sign any waiver form. The North Carolina Supreme Court held that defendant's subsequent inculpatory statement should not have been admitted against him at trial because he had not made a specific waiver of his right to counsel. The United States Supreme Court reversed.

According to the Court, an express statement is not indispensable to finding waiver. 441 U.S. at 373, 99 S.Ct. at 1757. The defendant in *Butler* had never requested an attorney and the Court held that it was not necessary that he make a specific oral or written waiver of that right. In this case, however, petitioner made a clear, express request for an attorney, and we agree with the district court that the State must make a strong showing of the waiver of that right. But we find that the State made such a showing.

Although the district court concluded that the State advanced no reason for its continued questioning of petitioner after his request for counsel, the facts reveal a very important reason: petitioner spoke with an attorney who advised him to talk to the police. See *U. S. v. Eagan,* 516 F.2d 1392, 1393 (8th Cir.), *cert. denied,* 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975) (confession voluntary where defendant made state-

ments to police after consulting with attorney). Without speculating on the merits of such advice, the fact remains that petitioner's request for an attorney *before* speaking with police was certainly honored, and his request to have an attorney present during interrogation seems clearly waived.

After making the written requests on the custodial advice form, petitioner was allowed to speak with an attorney. The police asked no questions about the incident until *after* he had spoken with the attorney and told them that he was then willing to talk. Before each subsequent interrogation, he was again informed of his rights and he again agreed to speak to the officers. We believe that petitioner's waiver of his right to remain silent in this case comes very close to an explicit waiver of his right to have counsel present during the interrogation. Contrary to the conclusion reached by the trial court, in the context of *Miranda,* a distinction between the right to counsel and the right to remain silent cannot so clearly be drawn.

■ The right to counsel here is not the separate, independent right guaranteed by the Sixth Amendment. Indeed, petitioner does not argue that it is.[5] Rather, it is merely part of the prophylactic rule developed by the *Miranda* Court to protect a criminal suspect's Fifth Amendment privilege against self-incrimination. See *Null v. Wainwright,* 508 F.2d 340, 342 (5th Cir.), *cert. denied,* 421 U.S. 970, 95 S.Ct. 1964, 44 L.Ed.2d 459 (1975); *Smith v. Wainwright,* 581 F.2d 1149, 1152 (5th Cir. 1978). The *Miranda* Court explained the function of the right to counsel in a Fifth Amendment context:

> The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is

5. The Sixth Amendment reads, in pertinent part:

> In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.

U.S.Const., Amend. VI. Petitioner does not argue that he was deprived of this constitutional right. Instead, he argues that his Fifth Amendment privilege against self-incrimination was violated.

indispensable to the protection of the Fifth Amendment privilege under the system we delineate today. Our aim is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process.

384 U.S. at 469, 86 S.Ct. at 1625. Clearly, the Court intended the right to counsel to aid a suspect in making an intelligent decision about whether to remain silent. It did not create an independent right.[6] We do not mean in any way to imply that every waiver of the right to remain silent constitutes a waiver of the right to counsel. Rather, we hold that under certain circumstances, a waiver of the right to remain silent *may* also constitute a waiver of the right to counsel. We hold that petitioner's express waiver of his right to remain silent in this case was clear evidence that he intended also to waive his right to have counsel present during the interrogation.

Petitioner contends that he did not waive any rights by telling the officers that he was willing to talk; rather, he made statements to the police under the erroneous assumption that because he had no attorney present, nothing he said could be used against him. We do not find this argument persuasive.

Defendant himself testified that he knew from his study of *Miranda, supra,* and *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), that he had a right to counsel. The state court found that petitioner's knowledge of the law made "unquestionabl[e]" his understanding of his rights. Transcript of September 2, 1976,

Hearing on Defendant's Motion to Suppress, at 52. We can find no error in that conclusion. Cf. *U. S. v. Frazier,* 476 F.2d 891, 896–98 (D.C. Cir. 1973) (where there was no coercion and defendant had capacity to understand warnings, lower court did not err in concluding that government carried burden of showing knowing and voluntary waiver).

According to the testimony of the last officer to question him, petitioner said that his lawyer had advised him to speak to the police. Since we must credit the officer's testimony, the only legal conclusion we can reach is that, after speaking with an attorney, petitioner waived his right to have counsel present during questioning. This is not a case where the police continued to question a suspect after he requested counsel in an attempt to break down his resistance and elicit a confession. See, e. g., *Maglio v. Jago,* 580 F.2d 202, 205 (6th Cir. 1978). Rather, this is a case where petitioner requested a lawyer and was allowed to consult with one. After consulting with an attorney, he agreed to speak with police. Petitioner does not contend that his statements were obtained through coercion or duress; indeed, they were, in the traditional sense, voluntary statements.

We hold that petitioner knowingly waived his right to counsel. We find the judgment of the district court to be clearly erroneous and accordingly reverse.

---

**6.** That is not to say that the *Miranda* rights to counsel and to remain silent are identical. On the contrary, the invocation of one or the other might require different procedures on the part of the police.

In *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Supreme Court stated that when a suspect asserts his right to remain silent, the police must stop the interrogation, but may resume questioning after a reasonable length of time if new warnings are given and if the facts show that they are not making repeated efforts to wear down the suspect's resistance. *Id.* at 105–06, 96 S.Ct. at 327. The Court suggested that the procedures might be different where a suspect requested a

lawyer. Quoting from *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966), the Court said:

> If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent.

423 U.S. at 101 n. 7, 96 S.Ct. at 325 n. 7.

In this case, as discussed in the text, police did not question petitioner until *after* he spoke with an attorney and *after* he said his attorney had advised him to speak. Therefore, under these facts, it seems clear that petitioner's express statement that he was willing to speak with police was also a waiver of his right to have counsel present during the interrogation.