**Kenneth JORDAN, Petitioner,**

v.

**Thomas ISRAEL and Bronson LaFollette, Respondents.**

No. 82–C–1089.

United States District Court, E.D. Wisconsin.

July 19, 1983.

David C. Niblack, State Public Defender by Steven D. Phillips, Asst. State Public Defender, Madison, Wis., for petitioner.

Bronson C. LaFollette, Wis. Atty. Gen. by Kirbie Knutson, Asst. Atty. Gen., Madison, Wis., for respondents.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

The petitioner, Kenneth Jordan, was convicted of party to a crime, first degree murder in a Wisconsin state court in 1975. The Wisconsin supreme court affirmed his conviction in 1980. *Jordan v. State,* 93 Wis.2d 449, 287 N.W.2d 509 (1980). Mr. Jordan petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner asserts that his conviction was obtained in violation of his right to counsel during custodial interrogation under the fourteenth, fifth and sixth amendments. The petition will be denied.

Mr. Jordan was sought by Milwaukee police in connection with the slaying of a policeman during the attempted robbery of a Milwaukee tavern on December 13, 1973. From Chicago, the petitioner phoned a Milwaukee lawyer, Michael Hupy, regarding his surrender and return to Milwaukee; Mr. Hupy advised the petitioner not to speak with the police. On December 20, 1973, Mr.

Jordan surrendered to the Chicago police, who advised him of his rights. Mr. Jordan said that he understood his rights and that he did not wish to make a statement; he was not questioned thereafter by the Chicago police.

On December 20, 1973, two Milwaukee detectives, Langford and Brah, arrived in Chicago to return Mr. Jordan to Milwaukee. The petitioner was not questioned during the trip back to Milwaukee. Mr. Jordan told the detectives that he wished to speak with Mr. Hupy as soon as they returned to Milwaukee. Shortly after his arrival in Milwaukee, at about 1:30 P.M., the petitioner was permitted to call Mr. Hupy. It is not clear whether he spoke to Mr. Hupy personally or with someone else in the latter's office. Following the phone call, Mr. Jordan was taken to an interrogation room.

At about 2:20 P.M. on the same day, detectives Langford and Brah entered Mr. Jordan's cell and advised him of his rights to remain silent, to cut off questioning at any time and to have an attorney present during questioning. Mr. Jordan stated that he had already been advised of his rights in Chicago and that he understood them. The detectives informed Mr. Jordan of the charges against him, and he denied any involvement. The detectives then read a statement by another suspect which incriminated Mr. Jordan. Mr. Jordan then said that he would tell the true story and proceeded to make a statement in narrative form. When the petitioner was finished, he immediately began to recite his story a second time so that it could be written down. The police report states that the transcription was completed at about 3:00 P.M., approximately forty minutes after the detectives had entered Mr. Jordan's cell.

At some time during Mr. Jordan's interrogation, Mr. Hupy arrived at the police administration building. He waited in the lobby for about ten minutes. When detective Langford was informed of Mr. Hupy's presence, he immediately left Mr. Jordan's cell and went to meet Mr. Hupy. At this point, Mr. Jordan had already told his story once and was in the process of reciting it a second time for transcription. Mr. Hupy told detective Langford that he wanted to see his clients, Mr. Jordan and another suspect. Detective Langford first took Mr. Hupy to see the other client, with whom Mr. Hupy spoke for about five minutes. Mr. Hupy was then taken to see Mr. Jordan. When Mr. Hupy arrived at Mr. Jordan's cell, Mr. Jordan was just finishing dictating his statement for transcription.

The petitioner argues that his statement was improperly admitted at his trial because it was elicited in the absence of counsel in violation of his fourteenth, fifth and sixth amendment right to have his counsel present during a custodial interrogation. He claims that his consistent reliance on the advice of counsel refutes the state's allegation that he waived his right. He also claims that a finding of waiver would be improper because the police deliberately prevented his attorney from consulting with him.

■ Under the fifth amendment, a criminal suspect is entitled to have counsel present during any custodial interrogation in order to safeguard his fifth amendment right not to incriminate himself. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The sixth amendment secures for a criminal suspect the right to the assistance of counsel after judicial proceedings have been initiated. *Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1976). Both the petitioner and the respondent agree that the petitioner's right to counsel had attached at the time of his interrogation in Milwaukee. They differ only with regard to whether the petitioner waived his fifth and sixth amendment right to have counsel present during the interrogation.

Before treating the issues raised by the parties, I will analyze sua sponte the legality of the Milwaukee detectives' interrogation of the petitioner when they knew that

he had earlier, in Chicago, invoked his fifth amendment right to remain silent. The *Miranda* decision established the general rule that once a suspect indicates that he wishes to remain silent, "the interrogation must cease." *Miranda,* 384 U.S. at 474, 86 S.Ct. at 1628. In *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the Court held that this rule did not provide a suspect with *permanent* immunity from further questioning once the right to remain silent had been invoked. Rather, the validity of a subsequent interrogation depends upon whether police have "scrupulously honored" the suspect's right to cut off questioning. *Mosley,* at 104, 96 S.Ct. at 326–327.

The controlling interpretation of the *Mosley* rule in the seventh circuit is that police may resume questioning a suspect who has invoked his right to remain silent "after a reasonable length of time if new warnings are given and if the facts show that they are not making repeated efforts to wear down the suspect's resistance." *Kennedy v. Fairman,* 618 F.2d 1242, 1248, n. 6 (7th Cir.1980). I find that the Milwaukee detectives' interrogation of the petitioner meets all three requirements.

When the petitioner was advised of his rights and interrogated in Chicago, he invoked his right to remain silent and was not further questioned. Approximately twenty hours passed before the petitioner was again advised of his rights and interrogated a second time by different officers in a different city. This was a reasonable length of time, long enough to give the petitioner an opportunity to change his mind about talking to police if he wished without there having been any pressure on him to do so. It is clear that the two interrogations, twenty hours apart, did not constitute "repeated efforts to wear down the [petitioner's] resistance." The interrogation in Milwaukee easily passes the test of *Kennedy* and, therefore, did not violate the petitioner's fifth amendment right to remain silent.

We now turn to the question whether the petitioner waived his constitutional right to have counsel present during interrogation. The standard for waiver of the fifth and sixth amendment right to counsel during interrogation is the same under both amendments. "[W]aivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981), *quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). See also *Miranda,* 384 U.S. at 479, 86 S.Ct. at 1630. The state has the burden of overcoming the strong presumption against waiver of the right. *Brewer v. Williams,* 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977). I find that the state has met its burden in this case.

An accused's decision to talk with police in the absence of counsel does not automatically indicate that waiver was "unintelligent" simply because it is the experience of bench and bar that uncounseled interrogations are more likely to produce incriminating statements. Just as people often make declarations against their best interests, so too do accused persons sometimes make incriminating statements to police of their own free will. The fifth and sixth amendments have no interest in discouraging any but coerced or unreliable statements.

The petitioner apparently contacted attorney Hupy on his own initiative before surrendering to the Chicago police. This demonstrates presence of mind and some appreciation of the value of legal representation. Mr. Hupy spoke with the petitioner twice and on at least one occasion told him not to talk with police. He told the petitioner to call when he returned to Milwaukee. Under all the circumstances, it is rea-

sonable to believe that Mr. Jordan understood from such advice that he had the right not to speak with police in the absence of counsel.

Following his arrest in Chicago on December 19, 1973, the petitioner was informed of his rights, as required by *Miranda*. He expressed his desire to remain silent and was not questioned. This experience with Chicago police tends further to suggest that the petitioner understood that he had rights which the police were obliged to honor. The next day, the petitioner was returned to Milwaukee. Following the instruction that Mr. Hupy had given him before he surrendered in Chicago, the petitioner asked to call his attorney as soon as he arrived in Milwaukee. The police immediately permitted him to do so. The petitioner's request to call Mr. Hupy and the Milwaukee police's prompt compliance with that request suggest once again that the petitioner was aware that he had a right to counsel which the police were legally bound to respect.

Immediately before interrogation, a Milwaukee police detective formally advised the petitioner that he had the right to remain silent and the right to have an attorney present during questioning. The petitioner said that he had already heard these rights from the Chicago police and that he understood them. Thereafter, the petitioner made the incriminating statement which was introduced against him at trial. The statement was in narrative form, not in response to prodding questions. No threats or promises of any kind were made by the police.

There is no evidence that the petitioner was in any physical or emotional stress. Although only twenty years old at the time the events here occurred, the petitioner had had fourteen prior arrests, indicating some familiarity with the criminal justice system. The Wisconsin supreme court considered all of the foregoing facts in reaching its conclusion that the petitioner waived his right to counsel during interrogation. *Jordan,* 93

Wis.2d at 466–67, 287 N.W.2d 509. In light of the petitioner's experience and mental competency, I believe that he understood the nature of his rights and the consequences of waiving them.

■ It is true that, in this case, the petitioner made no express waiver of his right to have counsel present during interrogation, but this is not absolutely necessary. A valid waiver may be inferred from an accused's actions in the totality of circumstances. "The question is not one of form, but rather whether the defendant, in fact, knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). I conclude from all the facts and circumstances of the case that Mr. Jordan "knowingly and intelligently" waived his right to have counsel present during interrogation.

The petitioner relies heavily on *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In that case, police who were alone with the defendant Williams during a three-hour car ride elicited incriminating statements. Mr. Williams had agreed with his attorney to make no statements to police and was told that he would not be questioned. The police were instructed accordingly. Once alone with Mr. Williams in the car, the police elicited incriminating statements, without advising Mr. Williams of his rights, and after Mr. Williams had several times said that he would talk after consulting with his lawyer. The Supreme Court found that Mr. Williams' "consistent reliance upon the advice of counsel" refuted the state's argument that he had waived his right to counsel during interrogation.

The petitioner argues that his reliance on the advice of counsel, like Mr. Williams', refutes the notion that he waived his right to counsel during interrogation. The petitioner's "reliance," however, consists of nothing more than the fact that he had retained Mr. Hupy. Mr. Jordan made no

statement that he would talk only after seeing his attorney. The Supreme Court called Mr. Williams' statements to that effect "the clearest expressions by Williams himself that he desired the presence of an attorney before any interrogation took place." *Brewer,* at 405, 97 S.Ct. at 1242. Other distinguishing features of the *Brewer* case relevant to the "knowing and intelligent" waiver standard are the failure of police to give the defendant warnings before eliciting the incriminating statements, and the fact that Mr. Williams had just escaped from a mental hospital and committed a brutal and senseless murder attesting to his utter insanity.

The petitioner's argument that fifth and sixth amendment rights vary depending upon whether a suspect has retained counsel is unpersuasive. The fact that the petitioner had retained counsel is only one element in the "totality of circumstances" waiver analysis. I decline to strain the *Brewer* decision to create special protections from waiver for accused persons who happen to have retained counsel.

Finally, the petitioner urges that waiver cannot be found because police deliberately prevented his attorney from being present during interrogation. In support of this proposition, the petitioner relies on a footnote from the *Miranda* decision to the effect that, in the case of *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), the police had violated the defendant's right to counsel by preventing his attorney from seeing him. Mr. Escobedo's attorney was at the police station for at least three hours, and his persistent demands to see his client were repeatedly ignored. During this period, Mr. Escobedo was subjected to interrogation by a group of policemen, and he finally incriminated himself. So blatant an obstruction of an attorney's effort to consult with his client no doubt violates the sixth amendment right to counsel.

The facts of the case at bar do not remotely resemble the facts of *Escobedo.*

The record shows that the petitioner made a statement to detectives shortly after the interrogation began. After the petitioner had finished, he recited his story a second time so that it would be written down. By the time Mr. Hupy arrived, the petitioner had, or almost had, finished his first recital. Mr. Hupy waited about ten minutes in the lobby of the police administration building. As soon as detective Langford was made aware of Mr. Hupy's presence, he went out to meet him. After speaking to another client, Mr. Hupy was taken to the petitioner who was just finishing giving his story a second time for transcription. Altogether, Mr. Hupy spent about fifteen minutes in the building before he saw the petitioner, about five of which he spent with another client.

I find in these facts not a hint of the sort of willful misconduct present in the *Escobedo* case. The sixth amendment does not require that police implement emergency procedures when an attorney appears. As long as no attempt is made to obstruct the attorney's access to his client and the attorney is allowed to see his client as quickly as is reasonable under normal station house procedures, the sixth amendment is not infringed.

In conclusion, I find that the facts of this case do not constitute a violation of the petitioner's fourteenth, fifth, or sixth amendment right to counsel.

Therefore, IT IS ORDERED that the petition for a writ of habeas corpus be and hereby is denied.